ELECTRONIC

**June 27, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **08-60985-Civ-COOKE/BANDSTRA**

ACE TECHNOLOGY CORPORATION,
a Delaware corporation, and EDWARD
BENNETT, individually and derivatively
on behalf of GFM CORPORATION,

          Plaintiffs,

vs.

GFM CORPORATION, a Michigan
corporation, N. RICHARD HONER and
JOHN O'DELL,

          Defendants.

_____/

## NOTICE OF REMOVAL

TO:    The Honorable Judges of the United States District Court for the Southern District of
Florida

      Defendants, GFM Corporation, a Michigan corporation, N. Richard Honer and John
O'Dell (collectively "GFM Defendants"), hereby file their Notice of Removal of the above-
styled action from the Circuit Court of the 17th Judicial Circuit, in and for Broward County,
Florida to the United States District Court for the Southern District of Florida. In support of this
Notice, GFM Defendants respectfully shows this Court the following:

      1.    This action was commenced in the 17th Judicial Circuit in and for Broward
County, Florida, Case No. 08-17607 (05) on or about April 22, 2008. A copy of the Complaint
is attached hereto as **Exhibit A**.

FTL:2751257:2

1

2.     The first date upon which any of the GFM Defendants received a copy of the Complaint was May 28, 2008, when John O'Dell was served with a copy of the Complaint, a Summons, a First Set of Interrogatories and a First Request for Production of Documents.  A copy of the O'Dell Summons is attached hereto as **Exhibit B**.[1]

3.     Defendant GFM Corporation was served with the same documents on May 29, 2008 and N. Richard Honer was served on June 3, 2008.  A copy of the GFM Summons is attached hereto as **Exhibit C** and a copy of the Honer Summons is attached hereto as **Exhibit D.**

4.     A copy of GFM Defendants' Notice of Appearance and Unopposed Motion for Enlargement of Time to Respond to Complaint are attached hereto, respectively, as **Exhibits E and F**.

5.     This Notice of Removal is filed within 30 days of receipt by GFM Defendants of Plaintiff's initial pleading setting forth the claim for relief upon which such action is based in accordance with 28 U.S.C. § 1446(b).

6.     This action is removable under 28 U.S.C. § 1441(b) because it is founded on a claim or right arising under the patent laws of the United States, specifically Title 35, United States Code, and this Court has original, exclusive jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), which grants exclusive jurisdiction to the federal courts in cases arising under the patent laws.

7.     Plaintiffs are seeking a declaration of rights under the patent laws.  Specifically, Plaintiffs, relying upon and citing in their Complaint 35 U.S.C. § 154(c)(1), seek a declaration concerning whether GFM Corporation is obligated to pay patent royalties after the expiration of a patent listed in the parties' patent licensing agreement.  Complaint, ¶¶ 12-13.  In order to

---

[1] The discovery requests are not being filed herewith in accordance with 28 U.S.C. § 1446(a), Fed. R. of Civ. P. 5(d) and Local Rule 26.1.B.

FTL:2751257:2

support its contention that there is an actual case or controversy that needs to be resolved, Plaintiff attaches to the Complaint as Exhibit 2 a letter from counsel for GFM Corporation explaining that GFM Corporation's obligation to pay a patent royalty exists only for so long as GFM Corporation is using an unexpired patent covered by the licensing agreement.   The letter cites to *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176 (1964) ("a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se*").

8.      The federal question at issue in this case is whether, under 35 U.S.C. § 154, a patentee can collect royalties under a patent licensing agreement after the expiration of the last patent that the licensee is actually using under the agreement.   Cases interpreting § 154, including *Brulotte, supra*, which hold generally that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se" are applicable to resolving Plaintiffs' declaratory relief claim under the patent laws.   *See Brulotte, supra*, at 32, 179 (applicability of restrictions in license agreement "to the post-expiration period is a telltale sign that the licensor was using the licenses to project its monopoly beyond the patent period"); *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1371 (11th Cir. 1983) ("a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se"); *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1023 (9th Cir. 2007).

9.      Further, 35 U.S.C. § 154 and federal cases interpreting that statute are applicable in cases such as this, where there is an issue concerning the recovery of royalties beyond the term of an expired patent.   *See, e.g., AM Intern, Inc. v. Graphic Mgmt. Assoc., Inc.*, 44 F.3d 572 (7th Cir. 1995) (questioning why, under § 154, machines shipped after expiration of patent should trigger royalty obligation); *Brunswick Corp. v. U.S.*, 36 Fed. Cl. 204, 211 (1996) (citing *Brulotte*

and disallowing royalties beyond term of patent under § 154); *Meehan v. PPG Indust., Inc.*, 802 F.2d 881, 883-884 (7th Cir. 1986).

10.     Because Plaintiff's declaratory relief claim is predicated upon 35 U.S.C. § 154 and U.S. cases interpreting that statute, this action is removable under 28 U.S.C. § 1441(b).

11.     In accordance with 28 U.S.C. § 1446(d), copies of this Notice are being served on counsel for Plaintiffs and filed with the clerk of court for the 17th Judicial Circuit in and for Broward County, Florida.

WHEREFORE, GFM Defendants respectfully request that this action be removed to this Court and that this Court accept jurisdiction of this action and henceforth this action be placed on the docket for further proceedings, the same as though this action had originally been instituted in this Court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via facsimile and U.S. Mail to Steven N. Lippman, Esq., ROTHSTEIN ROSENFELDT ADLER, 401 East Las Olas Blvd., Suite 1650, Fort Lauderdale, FL 33301, on this 27th day of June, 2008.

RUDEN, McCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.
Attorneys for GFM Defendants
200 East Broward Boulevard
P.O. Box 1900
Ft. Lauderdale, Florida 33302
Phone: 954/527-2492; Fax: 954/333-4092

By: _____
Matthew S. Nelles
Florida Bar No. 009245

# EXHIBIT A

IN THE CIRCUIT COURT OF THE
17TH JUDICAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.

**05**

**08017607**

ACE TECHNOLOGY CORPORATION,
a Delaware corporation, and EDWARD BENNETT,
individually and derivatively on behalf of GFM
CORPORATION,

        Plaintiffs,

v.

GFM CORPORATION, a Michigan
corporation, N. RICHARD HONER
and JOHN O'DELL.

        Defendants.

_____/



## **COMPLAINT**

Plaintiffs, Ace Technology Corporation and Edward Bennett, sue defendants, GFM

Corporation, N. Richard Honer and John O'Dell, and state:

    1.    This is an action for damages in excess of $15,000, for declaratory relief and for

temporary and permanent injunctive relief.

    2.    Plaintiff, Ace Technology Corporation ("ACE") is a Delaware corporation located in

Broward County, Florida.

    3.    Plaintiff, Edward Bennett, is a resident of Broward County, Florida.

    4.    GFM Corporation ("GFM") is a Michigan corporation that is subject to the

jurisdiction of this Court because it operates, conducts, engages in or carries on a business or

business ventures within this state; breached contracts in this state; and agreed to litigate this matter

in Broward County, Florida.

 

5.   Defendant, John O'Dell is a resident of Palm Beach County Florida.

6.   Defendant, N. Richard Honer, is a resident of the State of Michigan who is subject to the jurisdiction of this Court because he operates, conducts, engages in or carries on a business or business ventures within this state; and committed tortious acts within Broward County, Florida.

7.   Edward Bennett owns ACE and is a twenty-five percent (25%) shareholder of GFM along with defendants, N. Richard Honer and John O'Dell, and non-party, Trip Maghielse, each of whom own twenty-five percent (25%).

### Count I- Declaratory Relief

8.   Plaintiff realleges and reavers the allegations contained in paragraphs 1 through 4 hereof.

9.   ACE has the right to license a patented and trademarked stamping die and press combination used in the metal stamping industry referred to as the "Grip Flow System."

10.   On or about September 29, 1995, ACE and GFM entered into a written licensing agreement, a copy of which is attached hereto as Exhibit 1 (the "Licensing Agreement").

11.   In accordance with the terms of the Licensing Agreement,  ACE licensed to GFM the right to use the "Grip Flow System" in exchange for which GFM agreed to pay to ACE a total royalty of five percent (5%) of GFM's net sales of "Grip Flow System" goods based upon the right to use certain patents (three percent (3%) royalty) and the right to use certain trademarks and know how (two percent (2%) royalty).

12.   Pursuant to the express terms of the licensing Agreement, GFM's obligation to pay to ACE royalties based upon the right to use certain patents (three percent (3%) royalty) remains in effect until the last to expire of the patents listed on exhibit A to the Licensing Agreement; which is August 10, 2013, twenty (20) years after the date of filing for the application for U.S. Patent

2

Number 5,402,692, the last to expire patent, 35 U.S.C. §154 (c)(1).

13.     Despite the clear and unambiguous terms of the Licensing Agreement, GFM advised ACE that it believes that GFM's obligation to pay the 3% royalties ceases after the life of the last to expire patents that GFM is "actually using". September 26, 2007, letter from James Stevens to Leonard J. Preke, a copy of which is attached hereto as Exhibit 2.

14.     As a result of GFM's contentions, doubt has arisen as to ACE's rights and GFM's obligations to pay the 3% royalties under the terms and conditions of the License Agreement which requires a declaration of rights, privileges and immunities of the respective parties.

15.     ACE is obligated to pay its attorneys a reasonable fee for their services which GFM is obligated to pay in accordance with the Licensing Agreement.

16.     All conditions precedent to this action have been performed, waived or have occurred.

WHEREFORE, plaintiff, ACE Technology Corporation, requests that this Court declare the rights, privileges and immunities of the parties with regard to the Licensing Agreement and in doing so declare that GFM Corporation is obligated to pay to ACE Technology Corporation the three percent (3%) royalties pursuant to paragraph 5.1(a) of the Licensing Agreement until August 10, 2013; award to ACE Technology Corporation its reasonable attorney's fees and cost of suit and grant all other relief this Court deems just and appropriate.

## Count II – *Ultra Vires* Act

17.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 16 hereof.

18.     On or about September 29, 1995, GFM and O'Dell, Honer and Associates ("OHA") entered into an agreement (the "OHA Agreement"), a copy of which is attached hereto

as Exhibit 3. OHA is owned by John O' Dell and N. Richard Honer.

19.    Pursuant to the OHA Agreement, OHA was appointed to act as the exclusive sales representative for certain specified GFM accounts in exchange for which GFM agreed to pay to OHA a commission of five percent (5%) of the gross sales price of all GRIPflow goods sold to OHA accounts.

20.    Recently, John O'Dell and N. Richard Honer, as shareholders and directors of GFM and owners of OHA, proposed to the remaining GFM directors (plaintiff Edward Bennett and non party Trip Maghielse) to consider a buy out of the OHA Agreement.  In essence, the proposal is summarized as follows:

a)    OHA offered a 28% discount on the 5% commission earned in the future pursuant to the Licensing Agreement (Exhibit 1 hereof).

b)    N. Richard Honer and John O'Dell would be paid $1,050,000 for their "created value" (good will), paid over a period of time, plus interest, with a "put option" after the 5th year.

c)    All OHA accounts, per the Licensing Agreement, would become GFM in house accounts.

d)    OHA would not receive commissions for new parts after a defined "120 day period".

e)    GFM would absorb all of the current OHA employees with the exception of John O'Dell.

f)    N. Richard Honer to be appointed CEO and President of GFM

g)    Reassign the current President of GFM to Executive Vice President of GFM and name him President of a new facility (GF TEXAS)

h)    GFM would acquire the OHA office located at 550 Hulet Drive, Suite 04, Bloomfield Hills, Michigan, and purchase the furnishings, and assume the lease.

i)    GFM to hire N. Richard Honer's son as executive vice president of GFM and promote him in six months to CEO and President of GFM (with a salary of $135,000), replacing his father.

j)    GFM to hire several members of the OHA sales and administrative staff.

4

21.     Such a transaction between GFM and  one or more of its directors is an affiliated transaction explicitly governed by GFM's by-laws, a copy of which is attached as Exhibit 3, which provides that such transaction must be either approved by the affirmative vote of the majority of the disinterested (excluding John O'Dell and N. Richard Honer) directors or shareholders or is fair to GFM

22.     John O'Dell and N. Richard Honor met with GFM's two disinterested directors, including Edward Bennett, on numerous occasions to discuss and negotiate the foregoing proposal, some of which occurred in Broward County, Florida.

23.     On several occasions Edward Bennett expressed his disagreement with and unfairness of the proposed transaction. Despite these objections and even though the OHA Agreement specifically provides that commission payments are the only compensation to be paid to OHA and has no provision which would allow OHA to shift its overhead and other expenses to GFM or otherwise share in the value of GFM as a going concern, John O'Dell and N. Richard Honer initiated steps to conspire in an effort to line their own pockets at the expense of GFM and its other shareholders by magically converted a "sales commission" contract into a "buy-out" of assets where one does not exist. In essence, John O'Dell and N. Richard Honer have orchestrated a transaction in which GFM will be left with OHA's administrative burden and overhead while OHA (and its owners, John O'Dell and N. Richard Honer) are relieved of those obligations, continue to receive ongoing commission payments and share in the value of GFM as a "going concern" above and beyond rights as a shareholder of GFM.

24.     In an effort to cover up their self-dealing transactions and breaches of fiduciary duties and to fabricate a compliance with GFM's by-laws, John O'Dell and N. Richard Honor through OHA engaged Stout Risius Ross  to perform a valuation analysis of the proposed

5

transaction. This analysis, on its face, does not fulfill the obligations of GFM's bylaws because no opinion is rendered as to the fairness of the transaction and Stout Risius Ross was not retained by GFM to opine on whether the proposed transaction is fair to GFM. This analysis is also fatally flawed in several respects, including that part of the analysis which assumes that no further 3% royalty payments will be made by GFM to ACE following September 2008. Such assumption is incorrect and the fairness of the so-called 'buy-out" transaction cannot properly be assessed until this Court makes a declaration of GFM's obligations to continue to make such royalty payments as requested in Count 1 of this Complaint.

25.    A careful review of the proposed transaction reveals that it is not fair to GFM because, among other things:

a)    The proposal to reduce OHA commissions by 28% so as to cover additional costs is significantly low. The additional financial burdens taken on by GFM to cover additional items like employees, additional rent, furniture and other overhead would be significantly greatly than the savings proposed

b)    The current agreement between GFM and OHA is non exclusive, so GFM is not obligated to sell solely through OHA. GFM could sell through independent sales representatives with no additional costs, other than sales commissions. Thus there is no need to "buyout" the OHA Agreement.

c)    The obligation to hire N. Richard Honer's son and promote him to President and CEO of GFM is a substantial cost with an unknown benefit.

d)    GFM will pay rent and overhead for OHA's space which OHA will be permitted to use for OHA's exclusive use, including those unrelated to GFM, at no expense to OHA.

e)    Having GFM pay for "good will" of OHA in the amount of $1,050,000 is inappropriate since GFM is simply entering into a contract, not acquiring assets of OHA.

26.    Despite the above described inherent unfairness to GFM resulting from the proposed transaction, N. Richard Honor requested a special meeting of GFM's board to vote on the proposed transaction. On February 25, 2008, the four directors attended this special meeting and the directors

voted 3 to 1 vote to approve the proposed transaction (Edward Bennett representing the sole vote against the proposed transaction). Because the analysis prepared by Stout Risius Ross is not a fairness opinion and neither Stout Risius Ross nor anybody else was retained by GFM to render any such opinion, this vote actually is a 1 to 1 stalemate (Mr. Bennett voting against and Mr. Maghielse voting in favor, the two of them constituting the disinterested directors). Consequently, there is no valid authority to complete the proposed transaction such that any action to do so would be an *ultra vires* act and void as a matter of law.

27.     Despite the complete failure of proper corporate authorization, N. Richard Honer and John O'Dell have caused the necessary documents to consummate the proposed transaction to be prepared, although the documents have not yet been executed. In addition to the improper approval process, the documents prepared contain terms that are different than those approved at the February 25, 2008, board meeting. In the event the proposed transaction is consummated, GFM will be unfairly affected.

28.     All conditions precedent to this action have been performed, waived or have occurred.

WHEREFORE, plaintiff, Edward Bennett, requests that this Court enter a temporary and permanent injunction preventing GFM Corporation and anybody acting in conjunction with it (including, without limitation, John O'Dell, N. Richard Honer) from consummating the proposed transaction and grant all other relief this Court deems just and appropriate.

### Count III – Breach of Fiduciary Duty

29.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 hereof.

30.     N. Richard Honer and John O'Dell, as shareholders and directors of GFM, owe a

7

fiduciary duty to GFM.

31.     The foregoing is a breach of John O'Dell and N. Richard Honer's fiduciary duty to GFM.

32.     It is and would be futile and a useless act for Edward Bennett to demand that GFM assert the claims asserted herein because John O'Dell and N. Richard Honor are the persons whose conduct is complained of and have the power to prevent GFM from asserting such claims.

33.     As a result of the foregoing, GFM has been damaged.

34.     Edward Bennett is obligated to pay his attorneys a reasonable fee for their services which John O'Dell and N. Richard Honor are obligated to pay in accordance with Florida Statute §607.07401(6).

35.     All conditions precedent to this action have been performed, waived or have occurred.

WHEREFORE, plaintiff, Edward Bennett derivatively on behalf of GFM Corporation, requests that this Court enter a judgment in his favor and against John O'Dell and N. Richard Honor for compensatory damages plus interest, reasonable attorneys' fees and costs of suit and grant all other relief this Court deems just and appropriate.

Dated  April *22*, 2008

8



ROTHSTEIN ROSENFELDT ADLER
401 East Las Olas Boulevard, Suite 1650
Fort Lauderdale, Florida 33301
Tel:   (954) 522-3456
Fax:   (954) 527-8663

By: _____
   Scott W. Rothstein
   Florida Bar No. 765880
   Steven M. Lippman
   Florida Bar No.: 709638
   Steven H. Osber
   Florida Bar No.: 086088

H:\swrdocs\08-16975\complaint.doc

9

GRIP FLOW
LICENSING AGREEMENT

**Exhibit 1**



ACE TECHNOLOGY CORPORATION

LICENSING AGREEMENT

CONTENTS

| Paragraph | Provision | Page No. |
|---|---|---|
| 1. | Definitions | 2 |
| 2. | Grant of License | 3 |
| 3. | Technical Assistance | 4 |
| 4. | Terms | 4 |
| 5. | Compensation and Reports | 6 |
| 6. | Books and Records | 7 |
| 7. | Non-Competition and Trade Secrets | 8 |
| 8. | Trademark | 8 |
| 9. | Improvements and New Developments | 9 |
| 10. | Infringement By Others | 10 |
| 11. | Assignment and Sub-Licensing | 10 |
| 12. | Representations | 11 |
| 13. | Initial Year of Contract | 12 |
| 14. | Force Majeure | 12 |
| 15. | Notices | 12 |
| 16. | Other Acts | 13 |
| 17. | Severability | 14 |
| 18. | Binding Upon Seccessors | 14 |
| 19. | Entire Agreement | 14 |
| 20. | Waiver | 15 |
| 21. | Prior Agreements | 15 |
| 22. | Legal Relationship | 15 |
| 23. | Choice of Law | 16 |
| 24. | Attorney's Fees | 16 |
| 25. | Counterpart | 17 |
| 26. | Captions | 17 |
| 27. | Survival of Rights | 17 |
| 28. | Protection of Know-How | 17 |
| 29. | Best Efforts | 18 |
| 30. | Purchase of Tooling & Punch Presses | 18 |
| 31. | Legality of the Obligations | 18 |
| 32. | No Implied Covenants | 19 |
| 33. | Specific Acknowledgements | 19 |

## LICENSE AGREEMENT

THIS AGREEMENT is made and entered into by and between Ace Technology Corporation, located in Fort Lauderdale, Florida (hereinafter LICENSOR), and _GRIP FLOW MICHIGAN CORP_ located in _ROSEVILLE, MICHIGAN_ (hereinafter LICENSEE).

### WITNESSETH

Whereas, LICENSOR represents that it has the right to license a patented stamping die and press combination, (hereinafter referred to as the "Grip Flow System"), for the manufacture of metal stampings (herinafter referred to as "STAMPINGS").

Whereas, LICENSOR is the sole and exclusive licensing agent of all rights to the patents and registered trademark described in EXHIBIT "A" (hereinafter referred to as the "PATENTS & TRADEMARK")

Whereas, the LICENSOR possesses proprietary confidential information (Know-How) and expertise relating to the design, operation and maintenance concerning the Grip Flow System.

Whereas, the LICENSEE recognizes that the patents, trademark, and Know-How constitute a proprietary right of value and wishes to acquire a limited non-exclusive license to use LICENSOR'S Grip Flow System and Know-How to manufacture and sell STAMPINGS under the registered trademark Grip Flow in the countries of the United States of America and Dominion of Canada (licensed territory).

(1)

Whereas, the LICENSOR is willing to grant the LICENSEE such a license, in accordance with the terms and conditions recited herein.

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained, the parties, each intending to be legally bound, do hereby agree as follows:

1. DEFINITIONS

(1.1) The term "Grip Flow tooling" in this Agreement shall mean a stamping tool that produces STAMPINGS as described in EXHIBIT B without the need of counterpressure or a "vee-ring" as used by the fineblanking method.

(1.2) The term "Know-How" in this Agreement shall mean the technical information such as, but not limited to, the knowledge and expertise necessary for the customer to engage in the manufacture of STAMPINGS, use and maintenance of Grip Flow tooling, and the set up and operation of the Grip Flow press.

(1.3) The term "Grip Flow press" in the Agreement shall mean a punch press that has been engineered and built to accept and utilize Grip Flow tooling.

(1.4) The term "Grip Flow system" is the combined use of licensed Know-How, Grip Flow press, tooling and/or Grip Flow tooling to produce conventional or Grip Flow stampings, (STAMPINGS).

(2)

(1.5)  The term STAMPINGS in the Agreement shall mean straight side or conventional stampings produced with the Grip Flow system.

2.  GRANT OF LICENSE

LICENSOR hereby grants to LICENSEE, for the term of this Agreement, pursuant and subject to the terms and conditions of this Agreement, the following non-exclusive rights, licenses, and privileges, without the right to grant sub-licenses:

(2.1)  The non-exclusive limited license to use the Grip Flow system to manufacture STAMPINGS and to sell such STAMPINGS to customers in the license territory.

(2.2)  To use Grip Flow tooling in the same location where the Grip Flow press is located.  For purposes of this Agreement, "same location" shall mean a single physical customer location, designated by a single mailing address and contained within a single building, unless otherwise agreed to in writing by LICENSOR.

(2.3)  To purchase Grip Flow tooling & replacement components thereof only from authorized firms that are licensed by LICENSOR to make and sell patented Grip Flow tooling.

(2.4)  To use Grip Flow tooling in Grip Flow presses purchased from LICENSOR.

(2.5)  The non-exclusive right to use the LICENSOR'S registered trade mark "Grip Flow".

(3)

3.   TECHNICAL ASSISTANCE

(3.1)   LICENSOR shall, upon receipt of order for the Grip Flow press, disclose to LICENSEE, technical information including Know-How, knowledge and expertise necessary for the LICENSEE to engage in the use and maintenance of Grip Flow tooling and Grip Flow presses.

(3.2) The LICENSOR shall reasonably cooperate with the LICENSEE in furnishing advice concerning the preparation and establishment of the LICENSEE'S program and training of the LICENSEE'S qualified technical personnel for such purpose and shall make appropriate technical personnel available to the LICENSEE as consultants for a two to three week period, without charge, in the plant of Ebway Corporation, Ft. Lauderdale, Fl.  In the event the presence of such personnel of LICENSOR is required at the LICENSEE'S plant, the LICENSEE will pay a service fee (EXHIBIT B).

4.   TERMS

(4.1)  This Agreement is effective from the date on which it is accepted by the LICENSEE and will remain in effect for the life of the last to expire patents listed in EXHIBIT A, for royalties payable under paragraph 5 (5.1a) and for the life of the registered trademark listed in EXHIBIT A, for royalties payable under paragraph 5(5.1b).

(4.2)  In the event that LICENSEE shall be in default of any obligation imposed on it hereunder for sixty (60) days after written notice of such default has been given to it by the

(4)

LICENSOR, or if the LICENSEE becomes insolvent, files or has filed against it a petition of bankruptcy, makes a general assignment for the benefit of its creditors, or has a receiver or trustee appointed for its business or properties, the LICENSOR may forthwith terminate this agreement.  Any failure on the part of LICENSOR to enforce any provision of this Agreement shall not constitute a waiver of any obligation imposed on the LICENSEE by such provision.

      (4.3)   In the event of any termination of this Agreement prior to the term provided for in paragraph 4.1:

      (a)   The LICENSEE shall promptly return to the LICENSOR all documents containing any Know-How and all tangible property supplied by the LICENSOR hereunder and shall maintain confidential, Know-How and information of the LICENSOR which cannot be returned; and

      (b)   The LICENSEE shall promptly discontinue all activities in selling the STAMPINGS and the use of any Know-How or information supplied under this LICENSE.

      (c)   LICENSEE may continue to use the Grip Flow System with the tooling in his possession at termination, but only until such tooling is worn out or no longer usable; providing the LICENSEE continues to pay the earned royalty provided in paragraph 5.1 (a & b), during this continued use.

(5)



(d)    The non-exclusive right to use LICENSOR'S tradmark under paragraph 8 shall terminate with termination of this Agreement.

5.   COMPENSATION AND REPORTS

In consideration of the LICENSOR granted hereunder, LICENSEE agrees to pay the LICENSOR:

(5.1)   A total royalty of five (5%) percent of LICENSEE'S net sales of LICENSED GOODS manufactured by the Grip Flow System based on a calculation of:

(a)   Three (3%) percent for use of the patents.

(b)   Two (2%) percent for use of the registered trademark Grip Flow and Know-How.

(5.2) "Net Sales" is defined as the LICENSEE'S gross sales (the gross invoice amount billed to LICENSEE'S customers) to it's customers for shipments of the LICENSED GOODS less secondary operations, i.e. heat treating, plating, tapping, broaching, etc., freight and delivery allowances, discount and allowances, rebates, returns accepted for credit, and sales and excise taxes.   No deduction may be made for general advertising expenses.   No deductions may be made for costs incurred directly or indirectly in the manufacture, marketing, sales, distribution, promotion or exploitation of the LICENSED GOODS.   The basis of computation of royalties of assemblies containing LICENSED GOODS will be the fair value of the LICENSED GOODS used in the assembly sold individually, less discounts, taxes, shipping charges, postage, packing and insurance.

(6)

9/29/9

GDM
A  10/4/95

(5.3) LICENSEE shall, after the initial shipment of the LICENSED GOODS, submit to the LICENSOR, on or before the 15th (fifteenth) day following the end of each calendar quarter, a written report covering its sales of the LICENSED GOODS, less discounts, allowances, returns, etc., used in determining and computing Net Sales, together with its remittance for such amounts as may be due as royalty payments on such sales. The report shall contain LICENSOR'S Grip Flow Tooling Serial Number for each of LICENSEE'S Grip Flow Tools used during the calendar quarter and the number of parts produced with each of these Grip Flow Tools.

6.  RECORDS

For the purpose of the preceding paragraph, the LICENSEE shall maintain such books and records as are necessary to the computation of royalties accruing hereunder. Such books and records of the LICENSEE shall be open to inspection by the LICENSOR or its duly authorized representative at the LICENSOR'S expense during the regular business hours of the LICENSEE to the extent and at intervals reasonably necessary to verify the accuracy and sufficiency of such books and records required under the preceding paragraph.

LICENSOR shall further be permitted reasonable access to licensee's plant to check whether Licensee is utilizing the Grip Flow System as Licensed hereunder.

(7)

7.   NON-COMPETITION AND TRADE SECRETS

During the life of this Agreement, and thereafter, LICENSEE shall keep all information relating to this Agreement in the strictest confidence.  LICENSEE shall not disclose any trade secrets or information with respect to LICENSOR, its operation, its employees, its agents, its products, its trade practices, its clients, or any other matter related to LICENSOR, which it learns during the course of the term of this Agreement.

8.   TRADEMARK

8.1   The LICENSEE shall have the right, while this Agreement is in effect, to use the registered trademark "Grip Flow" to identify the STAMPINGS, and shall manufacture and sell such STAMPINGS under the trademark "Grip Flow".

All STAMPINGS manufactured and sold by the LICENSEE shall comply with the standards of quality, performace, and workmanship which the LICENSEE may, from time to time establish.

For this purpose, LICENSOR shall have the right to inspect, at reasonable times and places, the methods and equipment used by the LICENSEE to manufacture the STAMPINGS.

8.2   LICENSEE agrees that all rights in and to said trademark or any colorable variation thereof together with the goodwill attached to which said trademark is used, is and shall remain the sole and exclusive property of LICENSOR and LICENSEE

(8)

agrees that upon request by LICENSOR from time to time, to include in its advertisements, literature and printed matter, a statement indicating that LICENSOR is the owner of said trademark.

### 9.   IMPROVEMENTS AND NEW DEVELOPMENTS.

9.1   If the LICENSOR during the term of this Agreement makes or acquires any improvement, adaptation, modification or redesign, patentable or unpatentable, upon or for the Grip Flow system, the LICENSOR shall promptly furnish, free of charge to the LICENSEE, full particulars concerning the same.

9.2   If the LICENSEE, during the term of this Agreement, makes or acquires any improvement, adaptation, modification or redesign, patentable or unpatentable, in or for the Grip Flow system which is in the nature of a progressive, evolutionary development of such product, LICENSEE shall have the right to file patent applications thereon anywhere in its own name at its own expense, subject to the grant of a non-exclusive royalty free license of the right to make, use and sell such improvement, adaptations, modifications or redesigns to the LICENSOR.   In any country where the LICENSEE elects not to file any such patent application or applications on any such improvement, adaptation, modification or redesign, the LICENSOR may file such application or applications at the LICENSOR'S expense and for the LICENSOR'S benefits, and LICENSEE shall in such circumstances provide all reasonable assistance and information to LICENSOR to facilitate the

(9)

filing of such application or applications, the issue of patents therein and the maintenance in force of such patents.

9.3   In addition to the information to be conveyed under 9.1 and 9.2 above, each party shall allow the representative of the other reasonable access to its plant, to acquaint such representatives with any such improvement, adaptation, modification or redesign.   Any special request in connection with access by representatives of either party to the plant of the other shall, however, be furnished at the expense of the requesting party.

10.   INFRINGEMENT BY OTHERS

10.1   In the event that any patent hereby licensed shall be infringed by any third party, either party hereby having knowledge of such infringement shall promptly notify the other party of such infringement.— It is agreed that it is the LICENSOR'S OBLIGATION, and not the LICENSEE'S, to protect any patents that issue from the LICENSOR'S Patent Application and that the LICENSEE will not withhold any royalty due the LICENSOR during any proceedings against an infringer.

11.   ASSIGNMENT AND SUB-LICENSING

11.1   This License and all rights derived thereunder are non-assignable by LICENSEE in whole, or in part, and LICENSEE specifically agrees that it may not sub-license any of the rights granted hereunder, except to a successor purchaser of substantially the entire business of LICENSEE, including its good will, as a going concern, which successor purchaser, by taking such

(10)

assignment, accepts and agrees to perform each and every obligation of this Agreement in its capacity as such assignee. This Agreement shall be binding upon and inure to the benefit of LICENSOR, successors and assigns.   No assignment hereof shall relieve the assignor of its obligations hereunder.   It is agreed and understood that except for the License granted hereunder, this License Agreement, conveys no title directly, or indirectly, to any patent pending, or issued, or filed in the future.

12.   REPRESENTATIONS

(a)   LICENSEE represents and warrants that it is a corporation organized and validly existing under the laws of the state of its incorporation, with full power and authority to execute, deliver, and fully perform the terms and conditions hereof.   It is under no restriction or prohibition limiting its ability or right to execute, deliver and fully perform its obligations hereunder, and as to design, manufacturing, sales, distributing, and marketing expertise and capacity to fully perform its obligations hereunder.

(b)   LICENSOR represents and warrants that it has full power and authority to execute, deliver, and fully perform the terms and conditions hereof.   It is under no restriction or prohibition limiting its ability or right to execute, deliver, and fully perform its obligations hereunder.

(11)

13.   <u>INITIAL YEAR OF CONTRACT</u>

Notwithstanding anything to the contrary contained herein notwithstanding, the first "year" of the contract shall commence on the date first above written, and shall end on December 31,    .  This provision shall apply to any minimum royalties.

14.   <u>FORCE MAJEURE</u>

It is agreed and understood that in the event an act of federal, state, or local government (in the event of international licensing, foreign government) or war conditions, or civil unrest, or political disturbances, or fire, flood or labor troubles in the factory of the LICENSEE or in the factory supplying material and manufacturing parts necessary for the manufacture of the STAMPINGS, or act of terrorism, or any other circumstance beyond LICENSEE'S control, should prevent, curtail or delay the performance by LICENSEE of the provisions of this Agreement, then such non-performance or delay shall not be considered a breach of this Agreement, and shall be excused while said condition or circumstances and its consequences shall prevail, and LICENSEE'S time to perform any act required hereunder shall be adjusted accordingly.

15.   <u>NOTICES</u>

Any notice which any party may wish or may require to give other party hereunder shall be deemed effective twenty four (24) hours after posting of mailed notices, except that notices of change of address shall be effective when received.  Notice shall

(12)

be delivered personally, or deposited in the United States mail, registered, certified, or United States Postal Service Express Mail, return receipt requested, with proper postage pre-paid, if addressed as follows:

        To LICENSOR:    ACE TECHNOLOGY CORPORATION
                          6750 N.W. 21st AVENUE
                          FT. LAUDERDALE, FLORIDA  33309

      If to LICENSEE: GRIF FLOW MICHIGAN CORPORATION
                         2285 FRANKLIN ROAD  SUITE 130
                         BLOOMFIELD HILLS, MICHIGAN  48302

      With a copy to:

or to such other person or address as a party may designate for itself, from time to time, by written notice to the other parties, given in the aforesaid manner.

    16.  OTHER ACTS

        Each party to this Agreement agrees to perform any further acts and execute and deliver any documents, including

(13)

without limitation, such documents, agreements, and undertakings that may be necessary to carry out the provisions of this Agreement.

17. SEVERABILTY

It is intended that each provision of this Agreement shall be viewed as separate and divisible, and that in the event that any provision shall be held to be invalid, the remaining provisions shall continue to be in full force and effect.

18. BINDING UPON SUCCESSORS

This Agreement shal be binding upon and inure to the benefit of the parties hereto and the heirs, successors, administrators and assigns as herein provided.

19. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior contemporaneous agreements, representations, and understandings of the parties. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by the parties. This Agreement may not be modified, changed or supplemented, nor may any obligations hereunder be waived or extensions of time for performance be granted, except by written instrument signed by the party to be charged, or by its agent duly authorized in writing or as otherwise expressly permitted herein.

(14)

20. <u>WAIVER</u>

No waiver of any of the provisions of this Agreement shall be deemed, or constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. Unless otherwise provided, no waiver shall be binding unless executed in writing by the party making the waiver.

21. <u>PRIOR AGREEMENTS</u>

This Agreement shall be deemed to supersede any agreements heretofore entered into by and between LICENSOR, and LICENSEE, with respect to Grip Flow System.

22. <u>LEGAL RELATIONSHIP</u>

LICENSOR is not, and shall not represent itself to be a legal representative, agent or employee of LICENSEE, and is without authority to assume, create or incur any obligation or liability on behalf of LICENSEE. LICENSOR shall make no guarantee, warranty or representation on behalf of LICENSEE. Nothing herein contained shall be construed to place the parties in the relationship of partners or joint venturers, or to constitute one party the agent of the other. This Agreement does not create and shall not be considered to create the relationship of principal and agent or a partnership between the parties hereto. Neither party shall be liable in any way to any third party for an engagement, obligation, contract, representation, or transaction or for any negligent act or omission to act on the part of the other party, except as herein expressly provided.

(15)

*To: Ruby*

23. CHOICE OF LAW

This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of Florida, applicable to agreements made and to be performed wholly within the State of Florida, without regard to other principles and choice of laws. In the event a judicial proceeding is necessary, the sole forums for resolving disputes arising under or related to this Agreement are the Circuit Court of the State of Florida in and for Broward County, or the Federal District Court for the Southern District of Florida, and all related appellate courts. The parties hereby consent to the jurisdiction of such courts, and agree that venue shall be the aforesaid state, county and district. In this regard, any process in any action or proceeding commenced in the courts of the State of Florida or the federal courts therein arising out of any claim, dispute or disagreement may, among other methods, be served upon the parties by delivering or mailing the same, via registered or certified mail, addressed to the party at the address provided herein for notices; any such delivery by mail service shall be deemed to have the same force and effect as personal service within the State of Florida.

24. ATTORNEY'S FEES

Should any litigation arise between the parties regarding the conditions and provisions contained in this

(16)

Agreement, then and in such event, the prevailing party shall be costs incurred in entitled to recover attorney's fees and Court incurred in such litigation, including the cost of appeal.

25. COUNTERPART

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

26. CAPTIONS

The captions set forth herein are for convenience only and shall have no binding effect.

27. SURVIVAL OF RIGHTS

Notwithstanding anything to the contrary contained herein, such obligations which remain executory at expiration of the term of this Agreement shall remain in full force and effect until discharge by performance and such rights as pertain thereto shall remain in force until their expiration.

28. PROTECTION OF KNOW-HOW

LICENSOR'S Know-How shall be utilized by the LICENSEE only in accordance with this Agreement and, insofar as unpublished, shall not during the life of this Agreement nor at any time thereafter be divulged to unauthorized third parties. The LICENSEE shall also use its best efforts, to the fullest extent practical, to prevent its employees from disclosing or making improper use of such Know-How.

(17)

29.   BEST EFFORTS

The LICENSEE shall use its best efforts to advertise, exploit, and promote in the Licensed Territory, the manufacture, use and sale of stampings made by the Grip Flow System and the use of the trademark Grip Flow. For this purpose, the LICENSEE shall make such market surveys and conduct such promotional programs as may be appropriate. LICENSEE agrees to use the Know-How furnished to it hereunder solely in the manner so as to produce the royalties for LICENSOR contemplated hereunder.

30.   PURCHASE OF TOOLING & PUNCH PRESSES

LICENSEE agrees to purchase from LICENSOR all Grip Flow tooling, replacement punch and die elements for such tooling, and the Grip Flow Punch Press Machine developed and designed for Grip Flow tooling. Nothing in this Agreement shall give or be construed to give LICENSEE the right or authority to obtain such tooling or punch presses from a source other than LICENSOR or firms that are licensed by LICENSOR to make and sell Grip Flow tooling or punch presses.

31.   LEGALITY OF THE OBLIGATIONS

The obligations of the parties hereunder shall be subject to any applicable laws and regulations of the United States. If any provision of the Agreement shall be invalidated or suspended by the operation of law, the context and purposes of this Agreement shall otherwise, as so far as practicable, continue in

(18)

force and effect.

      32.   <u>NO IMPLIED COVENANTS</u>

        The duties of the parties under this Agreement are
fully set forth herein, and no additional convenants shall be
implied.

      33.   <u>SPECIFIC ACKNOWLEDGEMENTS</u>

        THE LICENSEE ACKNOWLEDGES THAT HE HAS READ THIS
AGREEMENT AND UNDERSTANDS IT AND AGREES TO BE BOUND BY ITS TERMS
AND CONDITIONS.    FURTHER, THE LICENSEE AGREES THAT IT IS THE
COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN THE
PARTIES WHICH SUPERCEDES ALL PROPOSALS OR PRIOR AGREEMENTS, ORAL OR
WRITTEN, AND ALL OTHER COMMUNICATIONS BETWEEN THE PARTIES RELATING
TO THE SUBJECT MATTER OF THIS AGREEMENT.

        IT IS FURTHER ACKNOWLEDGED BY LICENSEE THAT THIS
AGREEMENT SHALL REMAIN VALID, BINDING, AND IN FULL FORCE AND EFFECT
AFTER THE EXPIRATION OF CERTAIN PATENTS, COPYRIGHTS, TRADEMARKS
HELD BY THE LICENSOR.

        IN WITNESS WHEREOF, the parties have executed this
Agreement as of the date first written above.

        LICENSOR:

        By: _Edward D. Bennett_____

                    10/5/95

        LICENSEE:

        By: _____

          (19)          9/29/95

EXHIBIT A


PATENTS & TRADEMARK


1.   U.S. Patent Number 4,267,753 issued May 19, 1981, entitled apparatus for producing a blank from stock material, re-examination certificate number BI 4,267,753.


2.   U.S. Patent Number 4,951,537 issued August 28, 1990, entitled apparatus for producing a blank from stock material.


3.   U.S. Patent Number 5,402,692 issued April 4, 1995, method of making blanking dies and punches having rounded edges.


4.   U.S. Trademark Grip Flow Reg. No. 1,216,390 registered November 16, 1982.

5.   Canadian Patent Number 1127910, issued July 20, 1982, entitled method and apparatus for producing a blank from stock material.

6.   Canadian Patent Number 1282647, issued April 9, 1991, entitled apparatus for producing a blank from stock material.




· SINCE 1865 ·

# REISING, ETHINGTON, BARNES, KISSELLE, P.C.

### PATENT, TRADEMARK AND COPYRIGHT LAW

MICHAEL C. ADAMS
COREY M. BEAUBIEN
CARY W. BROOKS
TERESA A. CHISHOLM
E. COLIN CICOTTE
ROBERT C. COLLINS
FRANCIS J. FODALE
WILLIAM H. FRANCIS
ANDREW M. GROVE
GEORGE A. GROVE
RICHARD W. HOFFMANN
ERIC T. JONES
STEVEN L. PERMUT
BRIAN L. RIBANDO
MATTHEW J. SCHMIDT
DAVID J. SIMONELLI
JAMES D. STEVENS
STEVEN B. WALMSLEY
WILLIAM J. WAUGAMAN

201 W. BIG BEAVER - SUITE 400
TROY, MICHIGAN 48084

MAILING ADDRESS:
P.O. BOX 4390
TROY, MICHIGAN 48099-4390

TELEPHONE: (248) 689-3500
FACSIMILE: (248) 689-4071
www.reising.com

STUART C. BARNES    1910-1966
JOHN M. KISSELLE    1919-1980
PAUL J. REISING      1963-1993
PAUL J. ETHINGTON   1986-2003

September 26, 2007

Mr. Leonard J. Prekel                           Via email
Morris, Rowland, Prekel & Lewinski P.L.C.        Confirmation by First Class Mail
3221 West Big Beaver Road – Suite 102
Troy, MI  48084

Re: Grip Flow Licensing Agreement

Dear Mr. Prekel:

Pursuant to your request, I am writing to provide you with the following summary of the expiration dates of the patents included in Exhibit A of the Grip Flow Licensing Agreement, and the patent royalty obligations under that Agreement.

## U.S. Patent No. 4,267,753

U.S. Patent No. 4,267,753 is directed to a method and apparatus for producing a smooth edge blank from stock material (pursuant to the first sentence of the abstract of this patent).  The application leading to this patent was filed on November 9, 1979 and this patent issued on May 19, 1981.  Accordingly, pursuant to 35 U.S.C. §154(c)(1), this patent expired on November 9, 1999.

## U.S. Patent No. 4,951,537

U.S. Patent No. 4,951,537 is directed to a blanking punch and die combination wherein a die edge defining a die opening is radiused to cause metal flow, a shedder displaceable within the die opening to engage and clamp stock, a stripper that engages and clamps stock being punched, and "variable pressure means" that causes the stripper to engage the stock with a pressure that permits stock movement but prevents bending of the stock (pursuant to the first paragraph of the summary section of this patent).  The application leading to this patent was filed on September 29, 1988 and this patent issued on August 28, 1990.  Accordingly, pursuant to 35 U.S.C. §154(c)(1), this patent will expire on September 29, 2008.

**Exhibit 2**

Mr. Leonard J. Prekel
September 26, 2007
Page 2 of 3

## U.S. Patent No. 5,402,692

U.S. Patent No 5,402,692 is directed to a method of electrical discharge machining a curvature onto the cutting edge of a punch or die (pursuant to the first sentence of the abstract of this patent). The application leading to this patent was filed on August 10, 1993 and this patent issued on April 4, 1995. Accordingly, pursuant to 35 U.S.C. §154(c)(1), this patent will expire on August 10, 2013.

With regard to activity in Canada, Canadian Patent Nos. 1,127,910 and 1,282,647 may be applicable.

## Canadian Patent No. 1,127,910

Canadian Patent No. 1,127,910 claims priority from and is believed to include the same disclosure as U.S. Patent No. 4,267,753, noted above. The application leading to this patent was filed on August 22, 1980 and this patent issued on July 20, 1982. Accordingly, under the Canadian Patent Act §45(2) as I understand this provision of Canadian law, this patent would expire at its latest on August 22, 2000, although I note that the Canadian Patent Office lists it as having actually expired July 20, 1999.

## Canadian Patent No. 1,282,647

Canadian Patent No. 1,282,647 claims priority from and is believed to include the same disclosure as U.S. Patent No. 4,951,537, noted above. The application leading to this patent was filed on September 14, 1989 and this patent issued on April 9, 1991. Accordingly, under the Canadian Patent Act §45(2) as I understand this provision of Canadian law, this patent will expire on September 14, 2009 if all yearly annuities are paid[1].

## Patent Royalties Under the Grip Flow Licensing Agreement

Section 4.1 of the Agreement provides that, for royalties due under section 5.1(a), the Agreement remains in effect for the life of the last to expire patents listed in Exhibit A of the Agreement. Section 5.1(a) of the Agreement sets forth a 3% royalty that is payable "for use of the patents". Accordingly, the possibility that GFM may be obligated to pay a royalty remains until the last to expire patent, but the actual obligation to pay the royalty only accrues "for use of the patents".

In this regard, the Supreme Court of the United States has determined that royalties cannot be collected beyond the expiration of a patent. See e.g. *Brulotte v. Thys Co.*, 379 U.S. 29 (1964) ("a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se*"). Accordingly, in my opinion, GFM's obligation to pay the 3% patent

---

[1] I am not licensed to practice law in Canada and am not an expert on the Canadian Patent Act. Accordingly, if you would like, I can have our Canadian associate verify the expiration date of this patent.

Mr. Leonard J. Prekel
September 26, 2007
Page 3 of 3

royalty under the Agreement exists only for so long as GFM is using an unexpired patent covered by the Agreement.

With regard to the unexpired patents of Exhibit A of the Grip Flow Licensing Agreement, I have been informed that GFM does not use U.S. Patent No 5,402,692 because GFM does not make any such tooling. Indeed, the Agreement in Section 30 would seem to forbid GFM from making such tooling as it states that GFM must "purchase from LICENSOR all Grip Flow tooling, replacement punch and die elements for such tooling, ..." and therefore, in my opinion, the Agreement cannot also seek to collect royalties for an activity that the Agreement does not permit.

Accordingly, in my opinion, if GFM is using in the United States the blanking punch and die combination claimed in U.S. Patent No. 4,951,537, then GFM's obligation to pay the 3% patent royalty continues until expiration of that patent, which is September 29, 2008. If GFM is using Canadian Patent No. 1,282,647, in my opinion, GFM's obligation to pay the 3% patent royalty terminates on September 14, 2009 for such activity covered by this Canadian patent.

I trust this fully responds to your request. If not, or if you have any questions or concerns, please let me know.

Very truly yours,

REISING, ETHINGTON, BARNES, KISSELLE, P.C.

James D. Stevens



**COPY**

## AGREEMENT

This AGREEMENT made this 29th day of September 1995 between GripFlow of Michigan Corporation, hereinafter called the Company or Corporation, whose principal place of business is in the City of Bloomfield Hills, State of Michigan, and O'Dell, Honer and Associates, hereinafter called the Agent whose principal place of business is in the City of Bloomfield Hills, State of Michigan;

In consideration of the mutual promises and obligations contained herein, it is hereby agreed as follows:

1. The Company hereby appoints O'Dell, Honer and Associates, as its exclusive sales representative at the accounts designated in the manner described herein to sell for it products manufactured by the Company upon the terms and conditions herein;

2. O'Dell, Honer & Associates, hereby accepts the appointment and agrees to comply with the terms and conditions herein;

3. This AGREEMENT shall remain in full force until terminated in the manner provided herein;

4. The Agent will devote its best efforts on behalf of the Company and while acting as exclusive sales representative of the Company will not act as sales representative for any other company on a competitive line of products at the designated accounts. However, the Agent shall not be obligated to devote its entire time to selling only the products manufactured or sold by the Company and may also represent other manufacturers whose line of products is not competitive with those manufactured and/or sold by the Company. It is also agreed that the Agent may employ others to assist it as its agents or representatives in making sales of the Company's products.

5. The Agents and its agents, employees or representatives are neither employees or agents of the Company. They shall have no authority to make binding contracts on behalf of the Company and they shall not obligate the Company in any way without the prior written approval of a duly authorized officer of the Company, or a properly designated employee, nor shall they do anything detrimental to the Company's best interests.

6. It is understood and agreed that all contracts, sales, purchases, orders and all extensions of credit and all new accounts that may be proposed to be opened shall be subject to the approval of the Company and must be confirmed by the Company in writing before the same shall become binding upon the Company.

Exhibit 3

7. The specific accounts assigned to the Agent shall be designated in a letter signed by an authorized official of the Company addressed to the Agent in which reference shall be made to this contract. Such accounts may be amended or deleted by subsequent letters properly signed, subject however, to the terms and condition of paragraph 11.

8. The Agent shall be paid a commission of 5% of the gross sales price of all articles including dies, tools, molds and fixtures sold by them. The Company may pay the Agent a higher rate of commission, as mutually agreed upon, for the sale of experimental or special parts, short runs, and/or tools, dies, special machines, etc. Such commissions shall not be paid until payment for the products sold has been received by the Company from the purchaser. Within ten (10) days after the end of each month, the Company will pay the commission on all payments or partial payments received by the Company from customers of the Agents. The Agent shall be entitled to receive a commission on all orders received from the accounts assigned to it whether or not it is instrumental in obtaining the order and regardless of the shipping destinations.

9. The commissions earned by the Agent and paid to it by the Company shall be in full satisfaction of all services performed by it or its employees or representatives and all necessary expenses incurred by it in the performance of their work.

10. The obligations under this AGREEMENT, except as provided in paragraph 11 below, may be terminated by either party by giving the party thirty (30) days notice, in writing, of such termination.

11. In the event of termination pursuant to paragraph 10 or amended or deletion of the Agent's accounts pursuant to paragraph 7, it is expressly understood the Agent shall receive commissions as provided in paragraph 8, as follows:

a. On all billings on all orders in effect at the date of termination, amendment or deletion;
b. On all billings for re-orders of those parts upon which the Agent had earned commissions prior to the date of termination, amendment or deletion.
c. On all billings for parts which were remitted for quotation prior to the termination, amendment or deletion date, provided the orders are received within 120 days from the termination, amendment or deletion date.

And, if the Company desires, the Agent shall continue to service the business covered by a, b and c above.

IN WITNESS WHEREOF, the companies have caused this agreement to be executed by a duly authorized person of each company on the date and year first above written.

By: _____
George Maghielse, President

WITNESSES:

O'Dell, Honer & Associates

By: _____
N. Richard Honer

By: _____
John F. O'Dell

# EXHIBIT B

IN THE CIRCUIT COURT OF THE 17TH
JUDICAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

ACE TECHNOLOGY CORPORATION,
a Delaware corporation, and EDWARD BENNETT,
individually and derivatively on behalf of GFM
CORPORATION,

CASE NO. 08-17607 (05)

        Plaintiffs,

v.

GFM CORPORATION, a Michigan
corporation, N. RICHARD HONER
and JOHN O'DELL.

        Defendants.

_____/

*SERUGA*
*John, O'DELL*
*3/28/08*
*501PL7*

*SERUER*
*BOBBy /Cad*
*# 1/593*
*5/28/8*
*5:01PL*

## CIVIL ACTION SUMMONS

**THE STATE OF FLORIDA:**

To All and Singular the Sheriffs of the State:

    **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the
Complaint in this action on Defendant:

### JOHN O'DELL

**By Serving:**    375 Regatta Drive
                 Jupiter, Florida 33477

    Each Defendant is hereby required to serve written defenses to said Complaint on
Plaintiff's attorney, whose name and address is: **STEVEN N. LIPPMAN, ESQ.,
ROTHSTEIN, ROSENFELDT, ADLER, 401 EAST LAS OLAS BLVD., STE. 1650, FORT
LAUDERDALE, FLORIDA 33301**, within 20 days after service of this Summons on that
Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk
of this Court, either before service on Plaintiff's attorney or immediately thereafter. If a
Defendant fails to do so, a Default will be entered against that Defendant for the relief demanded
in the Complaint.

MAY 21 2008

WITNESS my hand and the seal of said Court on _____,2008.



            Clerk of the Court

                     DENESE DORE
            By: _____
                 Deputy Clerk

                     TRUE COPY
                     Circuit Civil

SUMMONS:
PERSONAL SERVICE OF AN INDIVIDUAL

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served upon you to file a written response to the attached Complaint in this Court. A phone call will not protect you. Your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and you wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda pro su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado de Demandadante).

### IMPORTANT

Des poursuites judiciaries ont ele entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecite a la plainte cijointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, ave mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si cous ne deposez pas votre reponse ecrite dans le relai requis, vous resiquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent tere saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il a d' autres obligations juridiques et vous pouvez requerir les services immediates d'un avocat. Si vous ne connaissez pas d'avocats, vou pourriez telephoner a un service de reference d'avocats ou a un brueau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme tempos que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocate) nomme ci-dessous.

Filed By:     Steven N. Lippman, Esq.
Address:      Rothstein Rosenfeldt Adler
              **Attorney for Plaintiff**
              401 East Las Olas Blvd., Ste. 1650
              Fort Lauderdale, Florida 33301
              Tele:  954/522-3456

# EXHIBIT C

# RETURN OF SERVICE

| State of FLORIDA | County of BROWARD | Circuit Court |

Case Number: 08-17607 05

Plaintiff:
**ACE TECHNOLOGY CORPORATION,**
vs.
Defendant:
**GFM CORPORATION, ET AL**

For: Steven Lippman, Esq.
ROTHSTEIN, ROSENFELDT, ADLER

Received by OJF SERVICES, INC. on the 28th day of May, 2008 at 11:14 am to be served on GFM CORP. R/A
**BRIAN LOUSH, 15585 STURGEON, ROSEVILLE, MI 48066.** I, _MARTIN RENENSE_, do hereby affirm
that on the _29TH_ day of _MAY_, 200_8_ at _3 :30_ .m., executed service by delivering a true copy of the
**SUMMONS, COMPLAINT, FIRST REQUEST TO PRODUCE, FIRST SET OF INTERROGATORIES AND
REQUEST FOR ADMISSION** in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of
the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____ .

(X) CORPORATE SERVICE: By serving _BRIAN LOUSH_ as
_RESIDENT AGENT FOR GFM CORP_ .

( ) OTHER SERVICE: As described in the Comments below by serving _____ as
_____ .

( ) NON SERVICE: For the reason detailed in the Comments below.

**COMMENTS:** _____

_____

_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in
which this service was made.

_MARTIN T. RENENSE_
PROCESS SERVER # _N/A_
Appointed in accordance
with State Statutes

**OJF SERVICES, INC.**
**13727 S.W. 152nd Street**
**P.M.B. 354**
**Miami, FL 33177**
**(954) 929-4215**
Our Job Serial Number: 2008009804

Copyright © 1992-2006 Database Services, Inc. - Process Server's Toolbox V6.2u

IN THE CIRCUIT COURT OF THE 17TH
JUDICAL   CIRCUIT   IN   AND   FOR
BROWARD COUNTY, FLORIDA

ACE TECHNOLOGY CORPORATION,
a Delaware corporation, and EDWARD BENNETT,
individually and derivatively on behalf of GFM
(05)CORPORATION,

CASE NO. 08-17607

        Plaintiffs,

v.

GFM CORPORATION, a Michigan
corporation, N. RICHARD HONER
and JOHN O'DELL.

        Defendants.

_____/



## CIVIL ACTION SUMMONS

**THE STATE OF FLORIDA:**

To All and Singular the Sheriffs of the State:

    **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the
Complaint in this action on Defendant:

### GFM CORP.

**By Serving:**    Brian Loush, Registered Agent
        15585 Sturgeon
        Roseville, MI 48066

    Each Defendant is hereby required to serve written defenses to said Complaint on
Plaintiff's attorney, whose name and address is:   **STEVEN N. LIPPMAN, ESQ.,
ROTHSTEIN, ROSENFELDT, ADLER, 401 EAST LAS OLAS BLVD., STE. 1650, FORT
LAUDERDALE, FLORIDA 33301,** within 20 days after service of this Summons on that
Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk
of this Court, either before service on Plaintiff's attorney or immediately thereafter.   If a
Defendant fails to do so, a Default will be entered against that Defendant for the relief demanded
in the Complaint.

    **WITNESS** my hand and the seal of said Court on _____,2008.

MAY 21 2008

Clerk of the Court

By: _____
        Deputy Clerk

SUMMONS:
PERSONAL SERVICE OF AN INDIVIDUAL

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served upon you to file a written response to the attached Complaint in this Court. A phone call will not protect you. Your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and you wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.   Existen otros requisitos legales.   Si lo desea puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda pro su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado de Demanadante).

### IMPORTANT

Des poursuites judiciaries ont ele entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposser une response ecite a la plainte cijointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, ave mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si cous ne deposez pas votre reponse ecrite dans le relai requis, vous resiquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent tere saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il a d' autres obligations juridiques et vous pouvez requerir les services immediates d'un avocat. Si vous ne connaissez pas d'avocats, vou pourriez telephoner a un service de reference d'avocats ou a un brueau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme tempos que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocate) nomme ci-dessous.

Filed By:      Steven N. Lippman, Esq.
Address:       Rothstein Rosenfeldt Adler
               **Attorney for Plaintiff**
               401 East Las Olas Blvd., Ste. 1650
               Fort Lauderdale, Florida 33301
               Tele: 954/522-3456

# EXHIBIT D

# RETURN OF SERVICE

State of FLORIDA                    County of BROWARD                    Circuit Court

Case Number: 08-17607 05

Plaintiff:
**ACE TECHNOLOGY CORPORATION,**
vs.
Defendant:
**GFM CORPORATION, ET AL**

For: Steven Lippman, Esq.
      ROTHSTEIN, ROSENFELDT, ADLER

Received by OJF SERVICES, INC. on the 28th day of May, 2008 at 11:14 am to be served on **NORMAN RICHARD HONER C/O O'DELL HONER AND ASSOCIATES, 550 HULET DRIVE, SUITE 104, BLOOMFIELD HILLS, MI 48302**. I, _MARTIN_ _ACKERE_, do hereby affirm that on the _16_ day of _JUNE_, 200_8_ at _10 45 h_.m., executed service by delivering a true copy of the **SUMMONS, COMPLAINT, FIRST REQUEST TO PRODUCE, FIRST SET OF INTERROGATORIES AND REQUEST FOR ADMISSION** in accordance with state statutes in the manner marked below:

(X) INDIVIDUAL SERVICE: Served the within-named person.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____.

( ) NON SERVICE: For the reason detailed in the Comments below.

Military Status: ( ) Yes  or  ( ) No   If yes, what branch? _____

Marital Status:  ( ) Married  or  ( ) Single   Name of Spouse _____

**COMMENTS:** _____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

_MARTIN T. ACKERE_
PROCESS SERVER # _____
Appointed in accordance
  with State Statutes

**OJF SERVICES, INC.**
**13727 S.W. 152nd Street**
**P.M.B. 354**
**Miami, FL  33177**
**(954) 929-4215**
Our Job Serial Number: 2008009805

Copyright © 1992-2006 Database Services, Inc. - Process Server's Toolbox V6.2u

IN THE CIRCUIT COURT OF THE 17TH
JUDICAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

ACE TECHNOLOGY CORPORATION,
a Delaware corporation, and EDWARD BENNETT,
individually and derivatively on behalf of GFM
CORPORATION,

CASE NO. 08-17607 (05)

       Plaintiffs,

v.

GFM CORPORATION, a Michigan
corporation, N. RICHARD HONER
and JOHN O'DELL,

       Defendants.

_____/



## CIVIL ACTION SUMMONS

**THE STATE OF FLORIDA:**

To All and Singular the Sheriffs of the State:

    **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint in this action on Defendant:

### NORMAN RICHARD HONER

**By Serving:**        O'Dell, Honer & Associates
                 550 Hulet Drive, Suite 104
                 Bloomfield Hills, Michigan 48302

    Each Defendant is hereby required to serve written defenses to said Complaint on Plaintiff's attorney, whose name and address is: **STEVEN N. LIPPMAN, ESQ., ROTHSTEIN, ROSENFELDT, ADLER, 401 EAST LAS OLAS BLVD., STE. 1650, FORT LAUDERDALE, FLORIDA 33301,** within 20 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a Default will be entered against that Defendant for the relief demanded in the Complaint.

    **WITNESS** my hand and the seal of said Court on ~~MAY 21 2008~~ ,2008.



Clerk of the Court

By: _____
             Deputy Clerk

SUMMONS:
PERSONAL SERVICE OF AN INDIVIDUAL

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served upon you to file a written response to the attached Complaint in this Court. A phone call will not protect you. Your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and you wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda pro su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado de Demanadante).

### IMPORTANT

Des poursuites judiciaries ont ele entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour depasser une response ecite a la plainte cijointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, ave mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si cous ne deposez pas votre reponse ecrite dans le relai requis, vous resiquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent tere saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il a d' autres obligations juridiques et vous pouvez requerir les services immediates d'un avocat. Si vous ne connaissez pas d'avocats, vou pourriez telephoner a un service de reference d'avocats ou a un brueau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme tempos que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocate) nomme ci-dessous.

Filed By:     Steven N. Lippman, Esq.
Address:    Rothstein Rosenfeldt Adler
         **Attorney for Plaintiff**
         401 East Las Olas Blvd., Ste. 1650
         Fort Lauderdale, Florida 33301
         Tele: 954/522-3456

# EXHIBIT E

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: 08-017607 (05)

ACE TECHNOLOGY CORPORATION,
a Delaware corporation, and EDWARD
BENNETT, individually and derivatively
on behalf of GFM CORPORATION,

               Plaintiffs,

vs.

GFM CORPORATION, a Michigan
corporation, N. RICHARD HONER and
JOHN O'DELL,

               Defendants.
_____/

## NOTICE OF APPEARANCE

      Ruden McClosky Smith Schuster & Russell, P.A. hereby files its Notice of Appearance

as counsel for Defendants, GFM CORPORATION, N. RICHARD HONER and JOHN

O'DELL, and requests that all further communications and court filings be directed to the

attention of Matthew S. Nelles, Esq.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished

via Facsimile and U.S. Mail to Scott W. Rothstein, Esq., Steven N. Lippman, Esq. and Steven H.

FTL:2738184:1

1

Osber, Esq., ROTHSTEIN ROSENFELDT ADLER, 401 East Las Olas Blvd., Suite 1650, Fort

Lauderdale, FL    33301, on this 17th day of June, 2008.

RUDEN, McCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.
Attorneys for Defendants
200 East Broward Boulevard
P.O. Box 1900
Ft. Lauderdale, Florida 33302
Phone: 954/527-2492; Fax: 954/333-4092


By: _____
     Matthew S. Nelles
     Florida Bar No. 009245

# EXHIBIT F

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: 08-017607 (05)

ACE TECHNOLOGY CORPORATION,
a Delaware corporation, and EDWARD
BENNETT, individually and derivatively
on behalf of GFM CORPORATION,

                Plaintiffs,

vs.

GFM CORPORATION, a Michigan
corporation, N. RICHARD HONER and
JOHN O'DELL,

                Defendants.
_____/

## UNOPPOSED MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO COMPLAINT

Defendants, GFM CORPORATION, N. RICHARD HONER and JOHN O'DELL, respectfully move for an enlargement of time to respond to Plaintiff's Complaint and as grounds therefor state that Defendants' counsel requires additional time in which to respond to the Complaint and requests that a response not be due until July 3, 2008. The undersigned has conferred with counsel for Plaintiff, who does not object to the relief being requested.

WHEREFORE, Defendants request that the Court enlarge the time for them to respond to the Complaint until July 3, 2008, and for such other and further relief as the Court deems appropriate.

FTL:2737177:1

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail to Steven N. Lippman, Esq., ROTHSTEIN ROSENFELDT ADLER, 401 East Las Olas Blvd., Suite 1650, Fort Lauderdale, FL 33301, on this 17th day of June, 2008.

RUDEN, McCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.
Attorneys for Defendants
200 East Broward Boulevard
P.O. Box 1900
Ft. Lauderdale, Florida 33302
Phone: 954/527-2492; Fax: 954/333-4092

By: _____
    Matthew S. Nelles
    Florida Bar No. 009245

FTL:2737177:1

2

# 08-60985-Civ-COOKE/BANDSTRA

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the informaton contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**ELECTRONIC**

**June 27, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ACE TECHNOLOGY CORPORATION and EDWARD BENNETT, individually and derivatively on behalf of GFM CORPORATION | GFM CORPORATION, N. RICHARD H O'DELL |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT:
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Scott W. Rothstein, Esq., Steven N. Lippman, Esq. and Steven H. Osber, Esq.

ROTHSTEIN ROSENFELDT ADLER
401 East Las Olas Blvd., Suite 1650
Ft. Lauderdale, FL 33301
(954) 522 3456

ATTORNEYS (IF KNOWN)

Matthew Nelles, Esq.

Ruden, McClosky, Smith, Schuster & Russell, P.A.
200 East Broward Boulevard, Ft. Lauderdale, FL 33301
(954) 527-2492

08 cv 60985-MGC/TEB

**(d)** Check County Where Action Arose: ☐ Miami-Dade ☐ Monroe ☒ Broward ☐ Palm Beach ☐ Martin ☐ St. Lucie ☐ Indian River ☐ Okeechobee Highlands

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

1 ☐ U.S. Government Plaintiff

2 ☐ U.S. Government Defendant

3 ☒ Federal Question (U.S. Government Not a Party)

4 ☐ Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX ONLY)
(For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 630 Liquor Laws | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liablity | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Mo*or Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Mo*or Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395 ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 863 DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 Habeas Corpus | ☐ 791 Empl. Ret. Inc. Security Act. | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 540 Mandamus & Other | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 550 Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

## V. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Re-Filed  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S)

a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO
(See Instructions second page): JUDGE _____ DOCKET NUMBER: _____

## VII. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

35 U.S.C. § 154 Declaration of rights under patent laws     Estimated days to try case (both sides) _3_

## VIII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND

Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

DATE 6/27/08

SIGNATURE OF ATTORNEY OF RECORD